### Eliza Ann Mason *versus* Elijah Mason.

Of the use of an inuendo in an action for slanderous words.

In such an action it is not competent to a jury to infer that there was no malice in uttering the slanderous words merely from the circumstances that they were spoken only once and stated as common report.

CASE for slander. The plaintiff in her first count stated that the defendant spoke of her the following words : " They say that she has had a young one. They say that Mrs. John Mason catched she and Jesse behind the barn," whereby one L. C. who was courting her, refused to marry her.

The second count was as follows : " And also for that whereas the said Eliza Ann is and ever hath been a virgin, &c. and whereas the said Eliza Ann at the time of committing the grievance, &c. had a brother called and known by the name of Jesse Mason, &c. and whereas the said Eliza Ann before the committing of the grievance had deservedly obtained a good and unspotted reputation, &c. ; nevertheless the said Elijah, well knowing the premises, but further contriving wickedly and maliciously to defame, &c. on the 1st September, 1825, at Roxbury, in said county of Cheshire, in a certain discourse which he the said Elijah then and there had in the presence of one D. G. of and concerning the said Eliza Ann, and of and concerning her intercourse with the said Jesse Mason, and of and concerning one Mary Mason, wife of John Mason of Sullivan aforesaid, then and there in the presence, &c. falsely and maliciously spoke and published of and concerning the said Eliza Ann, and of and concerning her intercourse with her brother the said Jesse, these other false, scandalous, malicious and defamatory words following, viz : *They say* (meaning it is reported) *that she* (meaning the said Eliza Ann) *has had a young one ; one of her little sisters* (meaning one

of the sisters of said Eliza Ann) *catched her* (meaning the said Eliza Ann) *milking herself ; they say* (meaning it is reported) *that Mrs. John Mason* (meaning the aforesaid Mary Mason) *catched she* (meaning the said Eliza Ann) *and Jesse* (meaning the said Jesse Mason) behind the barn (meaning that the said Mary discovered the said Eliza Ann and the said Jesse having carnal knowledge of each other, and meaning that the said Eliza Ann had been guilty of the crime of incest, by reason of the speaking of which, &c. the said Eliza Ann is and hath been greatly injured, &c.")

There was a third count on which no evidence was offered.

The cause was tried here upon the general issue at October term, 1826, when it appeared in evidence that the defendant on the 1st September, 1825, speaking of the plaintiff to one D. G. said, " *they say she has had a young one.*" D. G. asked the defendant how they knew it ; the defendant answered that " *one of her little sisters caught her milking herself,*" *and that* " *Mrs. John Mason* caught her and Jesse behind the barn." It did not appear the words were ever spoken to any other person or at any other time.

On the part of the defendant it was proved that five or six years before the words were spoken, it was currently and generally reported in the town where the plaintiff lived that she had had a child, and that one of her little sisters had caught her milking herself in a dish, and that she kept cloths in her breast to keep the milk from running through her clothes.

The court in summing up the evidence told the jury that the circumstance that the defendant had spoken the words only once, and to a single individual, had no tendency to shew that the speaking was not malicious ; and that the reports in circulation furnished to the jury no ground to presume that the defendant did not speak the words maliciously ; that it could not be presumed that the defendant had no malice in propagating a false report

Mason
*v.*
Mason.

simply from the circumstance that others did the same thing ; that if words tending directly to injure the character of another are spoken falsely, the presumption is that the person uttering them intended they should have their natural effect, and such intent is malice ; and in such a case the burthen of rebutting the imputation of malice rests on the defendant.    But if on the whole the jury believed there was no malice the defendant was entitled to a verdict.

The court further instructed the jury that if they believed that the defendant intended to insinuate that the plaintiff had had a criminal connexion with her brother Jesse, it amounted to an imputation of incest and the words were actionable in themselves ; that it appeared that she had a brother Jesse, that the conversation related to her chastity, and no attempt had been made by the defendant to show any other person who could have been intended ; it was therefore for the jury to judge whether the brother was intended, and what was meant to be insinuated by their being caught behind the barn together.

The jury found for the plaintiff on the two first counts and for the defendant on the third.

*Sullivan*, attorney general, and *Wilson, jun.* for the defendant, moved in arrest of judgment on the ground that the second count was defective.    And they contended that the plaintiff had in this court attempted to enlarge and extend the sense of the words by inuendo.    1 Chitty's Pleadings, 383.

They also contended that the jury were misdirected.

*J. Parker*, for the plaintiff, as to the motion to set aside the verdict, referred to 1 Pick. Rep. 6, *Alderman* v. *French* ; 15 Mass. Rep. 57, *Jackson* v. *Stetson, & ux* ; 2 Starkie's Rep. 301, *Brown* v. *Croome* ; 1 Espin. Rep. 228, *King* v. *Abingdon* ; 5 Burr. 2667, *King* v. *Woodfall* ; 9 East's Rep. 95, *Roberts* v *Camden* ; and Starkie on Slander, 220, to show that malice is implied in the speaking of defam-

atory words. And to 12 Coke's Rep. 134, *Earl of North-ampton's case* ; 7 D. & E. 17, *Davis* v. *Lewis* ; 5 East, 463, *Woolnoth* v. *Meadows* ; 1 Holt's N. P. Rep. 533, *Mills & ux* v. *Spencer & ux* ; 4 Cowen's Rep.408, *Treat* v. *Browning & ux* ; 6 Mass. Rep. 514, *Wolcott* v. *Hall* ; 1 Pick. Rep. 1 ; 10 Johns. Rep. 449, *Dole* v. *Lyon* ; 2 East, 426, *Maitland* v. *Goldeney* ; *Starkie on Slander*, 58, 214, to prove that it was no justification to the defendant that others reported the slander.

On the motion in arrest of judgment, he cited Cowp. 275, *Peake* v. *Oldham* ; 9 East, 93 ; 5 East, 463 ; 5 Johns. Rep. 224, *Van Vichten* v. *Hopkins* ; 8 Mass. Rep. 255, *Walker* v. *Winn* ; Cowp. 672, *Rex* v. *Horne* ; 2 D. & E. 206, *King* v. *Watson, & a.* ; 4 B. & A. 314, *King* v. *Burdett.*

" If the words are *capable* of conveying the particular meaning attributed to them by the plaintiff it will, after verdict for the plaintiff, be taken for granted that they were in fact used to convey such meaning." Starkie on Slander, 43.

RICHARDSON, C. J. We have examined the second count in the declaration and there does not seem to us to be any legal cause for arresting the judgment. It is averred that the plaintiff had a brother by the name of Jesse, and that in a discourse of and concerning the plaintiff and of and concerning her intercourse with the said Jesse the words were spoken. Now that the words, if, as it is averred, the brother of the plaintiff was meant by Jesse, contain an imputation of incest, no man who reads them can doubt. Enough is averred to make the words amount to an imputation of incest and the inuendoes seem to us very naturally to explain the words in that sense. 1 Saund. 243, note 4 ; 11 Johns. 54, *Gidney* v. *Blake* ; 4 Coke, 17 ; 2 Binney, 34, *Brown* v. *Lamberton* ; 7 Johns. 359, *Lindsey* v. *Smith.* In 1 Chitty's Pl. 383, it is said that " an inuendo is only explanatory of some matter already expressed. It serves to apply the slander to the precedent matter." And this is the only use made of any

inuendo in this case.    The motion in arrest must be overruled.

The defendant has also moved us to grant a new trial on the ground that the jury were misdirected, and we have carefully considered this motion.

It is a general rule that, when words slanderous in themselves have been falsely uttered, the presumption is, that the intention was malicious.  Such presumption may however be rebutted by showing that the words were not uttered in the malicious sense imputed by the declaration, or that they were spoken on an occasion which warranted the uttering of them.

But we think it very clear that such presumption cannot be repelled by the circumstance that the words were only once uttered and to a single person.    The most malicious purposes of the slanderer may be fully accomplished by a single uttering of the words to one individual. And although a frequent repetition of the slander is stronger evidence of malice than a single uttering ; still the circumstance that the words were spoken only on one occasion has no tendency in itself to shew that they were not malicious.    We are therefore of opinion that the jury were not in this respect misdirected.

It seems to us  to be equally clear that it was not competent to the jury to presume that the intent of the defendant was not malicious from the circumstance that he stated the words as common report and showed that there had been such reports.    8 Johns. 455, *Brooks* v. *Bemiss* ; 12 Coke, 132 ; 7 D. & E. 17.

There are cases, where common report may be admitted to mitigate the damages.  1 Maule & Selwyn, 284 ; 1 Holt, 533, *Mills* v. *Spencer*.    But where is the case in which it has been decided that a  jury may infer that an individual had no malice in propagating a slander merely from the circumstance that others had reported the same slander?  We believe no such case is to be found.  If it were once decided that such an inference was admissible, the

vilest slanders might be propagated with impunity. For the slanderer would only have to put the report secretly in circulation, and he might then most maliciously and injuriously echo his own slanders as the reports of others and thus ruin the reputation of individuals without rendering himself accountable for the injury.

There is in this case a particular reason why it ought not to have been submitted to the jury to infer there was malice from the reports proved to have been in circulation. For the most vile imputation that the plaintiff had been caught with her brother behind the barn seemed to have been entirely of the defendant's own fabrication. No report of any such circumstances was shown. And it would be singular indeed if it might be legally submitted to a jury to infer that his intent was not malicious because some part of what he had said against the plaintiff had been commonly reported. And we deem it only justice to say that we think the evidence adduced by the plaintiff in the trial very satisfactorily showed that the defendant was the fabricator of all the reports which had been in circulation against her reputation.

*Judgment on the verdict.*